· ANATOMIK FOOTWEAR CO. v. COWARD.

(District Court, S. D. New York. December 4, 1914.)

No. 5–14.

PATENTS ⬤═328—ANTICIPATION—ANATOMICAL FOOTWEAR.

The· Cole patent, No. 812,920, for anatomical footwear, *held* void for anticipation by a prior printed publication.

In Equity. Suit by the Anatomik Footwear Company against James S. Coward. On final hearing. Decree for defendant.

James H. Griffin, of New York City, for complainant.
Louis W. Southgate, of New York City, for defendant.

ROSE, District Judge. The complainant is the owner of letters patent No. 812,920, issued February 20, 1906, to Harlan P. Cole, assignor to Nettie D. Cole. It says the defendant has infringed thereon. The patent states that the invention relates to anatomical footwear of all kinds, and has for its object the prevention and cure of the disabilities and deformities known to surgeons as talipes valgus, talipes varus, weak foot, flat foot, etc. Its primary object is said to be the provision of footwear of any kind so constructed as to support the parts liable to displacement·through straining or weakening of muscles, thus preventing the turning of the ankle or the rotation of the foot inward or outward upon its long axis. It says that:

"In ordinary footwear the sole is curved inwardly to form the shank in such a way that no support is afforded to the foot where such support is most needed—just beneath and immediately anterior to the ankle—and the heel is located back of these points, so that it affords no support to that part of the foot receiving the weight of the body."

Further objects of the invention are said to·be:

(1) The "provision of a sole constructed on lines adapted to sustain the normal position of the foot and stiffened or reinforced under one lateral half. if desired"; (2) the "provision of a heel of such shape that the center of gravity or the weight of the body conducted through the leg to the foot will fall within the base thereof, so that it will be impossible for the ankle to turn or the foot to revolve about its longitudinal axis"; and (3) the "provision of footwear of symmetrical shape which will not apparently differ in appearance to the casual observer from the common kinds in universal use, but which will not only prevent the troubles above set forth, but will effect a cure of chronic cases."

· It is stated that changes may be made in the shape of the sole, and also in that of the heel, in the patented footwear, without departure from the invention, which is not limited to the exemplifications given. Furthermore, the construction may be such that the foot may be supported in ways different from that shown, and still be within the purview of the invention.

There are two claims:

"1. Footwear having a sole laterally extended on one side and a heel also laterally extended on one side to conform to the extension of the sole, said heel being forwardly extended on one side beneath the shank, whereby the. weight of the body is thrown within the space occupied by the lateral exten-

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

sion of the sole and the forward and lateral extension of the heel, and turning of the ankle is prevented.

"2. Footwear having a heel extended laterally beyond the normal sole to sustain the foot and extended forwardly on the inner side over the shank, whereby the line of weight of the body is thrown within the space occupied by said heel, and rocking of the foot on its longitudinal axis is prevented."

It will be noted that the language of these claims makes their construction difficult. Nothing can be read upon the first claim that does not prevent the turning of the ankle, and nothing can be read on the second that does not prevent the rocking of the foot on its longitudinal axis. The first claim is not infringed, unless the sole and the heel are so extended that the weight of the body is thrown within the space occupied by the lateral extension of the sole and the forward and lateral extension of the heel. The first claim is not restricted to any particular forward extension of the heel. Any forward extension, however limited, can apparently come within its terms, provided there is such a lateral extension of the heel and the sole as to throw the weight of the body within either the space occupied by the extension of the heel in one or the other direction or the lateral extension of the sole.

The patent recommends that the sole should be as wide as the natural foot, but the claims are not restricted to such construction. Apparently, in order to hold that any device infringes either of the claims, it is necessary to decide that such device in point of fact prevents the turning of the ankle or the rocking of the foot on its longitudinal axis. This is an unusual kind of question to submit to a court, which, though by courtesy assumed to be learned in the law, is not supposed by anybody to be an authority on anatomy. A judge who in all seriousness feels that he is utterly incompetent to pass upon such a question may be reluctant to decide that such construction of footwear either will or will not do all that the patent says it will. In the one case, if he is wrong, he may do a great deal of harm to the patentee. In the other, his erroneous opinion may be used to advertise something as valuable, which really is worthless.

Dr. Hills Cole, the president of the complainant and a witness for it, gave as part of the presentation of complainant's case a lecture illustrated by magic lantern slides. In answer to a question asked him at that time, he said that medical and surgical opinion as to the theory upon which the invention is based was not unanimous. A number of medical gentlemen of most excellent standing testified in support of complainant's contention, yet none of them ever claimed to state what is the opinion of the profession generally on the question. The patent claims, if otherwise sustainable, could have been sustained without passing on this anatomical problem at all, had they simply described a particular form of shoes, and had such shoes been useful in the sense that an appreciable number of people found them more comfortable and therefore liked them.

The difficulties raised by the wording of these claims is not merely theoretical. It manifests itself in the examination of witnesses and in the arguments of counsel. A shoe with the lateral and forwardly extending heel does not in complainant's view anticipate, unless such extension was in itself sufficient to keep the ankle from turning or

the foot from rocking. Even where there is a great enough extension of the heel or of the sole to keep both ankle and foot firm, yet it does not in complainant's view embody its invention, if there is something else in the construction of the shoe which in the opinion of complainant's witnesses or counsel would neutralize the effect upon the foot and ankle otherwise to be obtained from such heel and sole. A sole which is not laterally extended very much is said to infringe, because it is claimed to extend enough to keep the ankle from turning. The function of the device is thus made a part of the claim. Whatever other doubts there may be about the meaning of these claims, and as to whether defendant has infringed them, it is obvious that they cannot be sustained, if prior to the date of the alleged invention any printed publication stated that the forward and lateral extension of the heel and the lateral extension of the sole prevented or tended to prevent the turning of the ankle or the rocking of the foot.

In 1898, more than five years before application was made for the patent in suit, Dr. H. P. H. Galloway, of Toronto, Canada, published an article in a scientific journal in which he recommended a particular construction of boot, and in so doing said:

"In general, the last upon which this boot is built differs from an ordinary last chiefly in having a straighter inner boarder, in greater width, and especially in having a very broad and flat sole. The heel of the boot is much lower and larger than usual, and its inner side widens out laterally as it approaches the floor, while its inner boarder is not only built up higher than the outer, but is continued farther forward beneath the shank. The inner side of the sole just beyond the shank is correspondingly raised and projected inward."

This appears to be a clear description and anticipation of the fundamental conception of the patent in suit. The complainant denies that this article discloses its invention, because it says that Dr. Galloway was not willing to rely solely upon these extensions, but recommended the doing of some other things which, in the view of the complainant's witnesses, would neutralize the effect of the longer and broader heel and the broader sole. These other things relate to additional means of support, which in certain cases he recommends, for the foot. But complainant's patent distinctly says that the construction may be such that the foot may be supported in other ways different from that shown, and still be within the purview of the invention, and it also says that the sole may be stiffened and reinforced, to afford greater rigidity and sustaining power, if desired.

There is no question that this article of Dr. Galloway was published before the making of the invention of the patent in suit. In plain language it describes what the complainant does, and recommends it for precisely the purposes to which complainant puts it. It is not, in my view, necessary to go into any other question in this case. That various people, before the patentee, knew that broader and longer heels and broader and flatter soles were useful for the purposes described in complainant's patent appears to have been established. As old shoes are not usually preserved, there is more or less room for controversy as to the precise facts with reference to each of the several prior uses which the defendant sets up. There are various patents, as, for exam-

ple, to Tillotson, No. 207,370, August 27, 1878, and the design patent to Kohn, No. 31,330, August 1, 1899, which appears to anticipate or describe the essential features of the patented device. On the other hand, it is true that such shoes as those made by the complainant and shown in its patent were rare before it put them on the market. If used at all, they were constructed for people who had unusual trouble with their feet; but then it is precisely for the prevention and cure of just such trouble that the patentee's invention was intended. However, as in my opinion that invention was described in Dr. Galloway's publication, more has already been said on the subject than is necessary.

The bill will be dismissed, with costs.